[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 49, and the defendant husband, 49, married on June 11, 1982 in Wilton, Connecticut. The plaintiff is a CT Page 9152 physician and, at the time of this marriage, was collecting $48,000.00 annually paid by her disability policy. She had previously been in private practice specializing in dermatology until July, 1979 when she became ill. These payments continued until the end of 1984. The payments were not taxable to the plaintiff. The plaintiff then commenced employment with Duracell as Medical Director. She remained there until she accepted employment on January 2, 1991 at a Groton clinic that was attached to Yale University. This position also required the plaintiff to serve part time at St. Francis Hospital in Hartford. She remained in this employment, until June, 1993. In August, 1993 the the plaintiff accepted an offer (Plaintiff's Exhibit #3) of employment from F.H.P. located in Palm Springs, California where she remains employed, presently at a weekly gross salary of $2,653.00. After mandatory deductions the plaintiff's net disposable income is $1,588.00 as on her financial affidavit of May 19, 1995.
At the time of the marriage the defendant, a teacher previously employed by the University of Bridgeport, was on unpaid leave, was awaiting the result of a grievance he had filed protesting his termination by the university. In 1984, the arbitrator reinstated the defendant and he was "made whole" as part of the award in that the university paid the defendant the difference between his regular salary and his part time earnings during his leave from the university. The defendant pursued a doctorate in political science during the 1986-1987 school year, on a full time basis. He returned to the university as assistant professor for the 1987-1988 academic year. For the 1992-1993 and 1993-1994 academic years the defendant served as Interim Dean of the College of Arts and Science. At the beginning of the current academic year, he no longer serves as dean and has continued as Associate Professor at an annual salary of $55,000.00 gross or about $2,170.00 monthly.
The parties lived together for a period of time before the marriage during which time they pooled their income. The court finds the evidence concerning this pre-marital period relevant only to the extent that the plaintiff allowed the defendant to cohabit for 18 months before he was divorced from his former wife. There is one child that the defendant was obliged to support. In lieu of paying $25.00 weekly as court ordered child support, the defendant promised to pay the college expenses of the minor daughter.
The plaintiff claims that the defendant siphoned money from CT Page 9153 their pooled income in order to create a college fund for his daughter. The court has concluded that the defendant's explanation that he concealed the money he had set aside for his daughter was to avoid the plaintiff's anticipated objections is accurate as testified to by the plaintiff.
During the plaintiff's employment at Duracell the plaintiff, by her own admission, was obliged to travel away from home 50% of the time. During the plaintiff's employment in Groton the plaintiff rented an apartment in Groton to use during the week.
The defendant maintained the plaintiff's home, applied a new roof, reshingled the house, built decks, renovated the two bathrooms during the years 1982 to 1988. In 1989 a major addition was completed by adding a second floor. This latter addition was paid for by the plaintiff who received a settlement from an auto accident of $70,000.00.
In 1989 the plaintiff admitted having two extra-marital affairs. No claim was made that these affairs caused the breakdown. As a result the parties divided their joint accounts. The plaintiff arranged to execute a quit claim deed conveying an undivided half interest to the defendant, (Defendant's Exhibit N). The defendant in turn, took his name off the brokerage account at A.G. Edwards that had been in both names throughout the marriage. The defendant testified that these actions were intended to restore stability to their marriage.
The marriage was broken down finally and irretrievably when in May 1993 the plaintiff discovered that the defendant had carried on an extra-marital affair with a university associate in 1992.
The plaintiff departed for California in August, 1993. The defendant remained in the parties' home until earlier this month.
The court, having reviewed the evidence in light of the statutory criteria, enters a judgment on the third count of the amended complaint. The first and second counts of the amended complaint are dismissed as is the defendant's cross-complaint. The following orders are entered as part of the judgment.
1. The real estate known as 97 Highland Road is ordered sold. The court retains jurisdiction to articulate further orders to effect the sale if the parties cannot agree on the asking price or other terms of sale. CT Page 9154
The net proceeds of sale shall be distributed by paying over to the plaintiff the first $100,000.00 of net proceeds and each party receiving 50% of the balance.
2. The plaintiff shall retain her California home as her sole property.
3. The defendant is awarded 25% of the plaintiff's Duracell 401(k) plan which the plaintiff listed as containing $87,000.00 to be transferred to the defendant's IRA as a non taxable event.
4. The parties are ordered to divide their tangible personal property items equitably and, failing to do so, each may submit a list of disputed items via an articulation motion.
5. No periodic alimony is awarded.
6. The plaintiff is awarded sole ownership of the 1959 Corvette and the 1970 Mercedes Benz 280SL as well as the 1987 Toyota Supra.
7. The defendant shall keep the boat and the 1986 Isuzu.
8. The parties shall otherwise retain as sole property the assets each lists and assume as sole debts the liabilities each lists, as shown on the financial affidavits, except as reallocated above.
These orders are based on the court's findings that the plaintiff has the greater earning capacity, a greater opportunity for future acquisition of capital assets and greater employability due to her vocational skills.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.